UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| QUANDRALA PETERSON | CIVIL ACTION NO. 16-1646 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BROOKSHIRE GROCERY COMPANY AND THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are Defendants Brookshire Grocery Company ("Brookshire") and Travelers Indemnity Company of Connecticut's ("Travelers") Motion for Summary Judgment (Record Document 11) under Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of all of Plaintiff, Quandrala Peterson's ("Peterson") claims. For the reasons stated in the instant Memorandum Ruling, Defendants' Motion for Summary Judgment is hereby **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from a slip and fall at Super One Foods, which is owned and operated by Brookshire. See Record Document 1-1 (Peterson's state court petition). On November 2, 2016, Peterson filed suit in state court against Brookshire pursuant to the Louisiana Merchant Liability Act, La. Rev. Stat. 9:2800.6 ("LMLA"). See id. Brookshire then removed the action to this Court based on 28 U.S.C. § 1332, diversity jurisdiction. See Record Document 1. On March 9, 2017, both Peterson and Super One Foods' store manager, George Neill ("Neill"), gave depositions. The deposition testimony was attached to Defendants' Motion for Summary Judgment and Peterson's Opposition to Defendants'

Motion for Summary Judgment. The Defendants also attached video surveillance, labeled Exhibit C, to their Motion for Summary Judgment.

The facts that make up this present action are as follows: on November 24, 2015, Peterson and her mother, Tammy Peterson, were shopping at Super One Foods. See id.; see Record Document 11-5 (Peterson's deposition page 26, lines 5-9). The store closes at 10:00 pm and just prior to closing, an announcement was made over the intercom system notifying all remaining customers of the impending closure. See Record Document 11-4 (Neill's deposition page 18, lines 18-23); see Record Document 11-5 at 38, lines 5-10. As Peterson was finishing up her shopping at the rear of the store, in the dairy/beer section, Peterson realized she had forgotten the whipping cream needed for her macaroni and cheese recipe. See Record Document 11-5 at 39, lines 10-23. Peterson stopped her buggy and "trotted down" the aisle to grab the whipping cream and "trotted back" to her buggy. See id. at 45, lines 2-12. Upon reaching the buggy, Peterson slipped and fell on what has been described as a clear liquid. See id. at 40, lines 19-24. As a result of the fall, Peterson sustained an injury to her right knee. See id. at 25, lines 3-6.

Subsequent to the slip and fall, Neill arrived at the scene and took a photograph of the clear liquid and drafted a "Customer Accident Report" detailing the facts as they occurred to Peterson. See Record Document 11-4 at 47-49 (photograph and customer accident report). In his deposition, Neill testifies and the video surveillance affirms that Neill was at the scene of the incident approximately twenty-two minutes prior to Peterson's slip and fall. See id. at 29 and 30, lines 18-25 and 1; see Exhibit C. Neill testified that he did not recall seeing any water at that point in time. See id. at 32, lines 18-20. In her deposition, Peterson testified that she walked through the area where she

fell on two prior occasions without incident and without notice of any substance on the floor and did not see the substance prior to her fall. See Record Document 11-5 at 41, lines 1-23. The video surveillance illustrates that the scene of the incident was heavily traversed from the time Neill was at the scene twenty-two minutes prior to the time of Peterson's slip and fall. See Exhibit C. Peterson testified and the photograph illustrates no signs of grocery shopping tracks, footprints, or any other marks or skidding through the liquid. See Record Document 11-5 at 42, lines 10-18; see Record Document 11-4 at 47 (photograph).

In their Motion for Summary Judgment, the Defendants argue that Peterson must prove that "Brookshire knew or should have known about the clear substance on the floor prior to Peterson falling." Record Document 11 at 2, ¶ 6. Specifically, the Defendants focus their Motion for Summary Judgment on whether Brookshire had "constructive notice" of the condition which caused the damage, prior to the occurrence. See Record Document 11 at 2-3, ¶¶ 6-7. The Defendants further argue that Peterson has failed to prove that the clear liquid existed for such a period of time that it would have been discovered had Brookshire exercised reasonable care. See id. Lastly, the Defendants argue that the presence of an employee of Brookshire, Neill, in the vicinity in which the condition existed does not, alone, constitute "constructive notice," unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition. See id. The Defendants contend that Peterson has only offered speculation in an attempt to support an inference of "constructive notice." See id. at 3, ¶ 7.

Peterson opposes the Motion for Summary Judgment asserting that there are numerous genuine issues of material fact. See Record Document 13-1 at 1-2. Specifically, Peterson alleges that:

> (1) Brookshire's manager, George Neill, failed to discover the hazardous liquid.
>
> (2) Brookshire's manager trains his employees to keep watch for dangerous hazards like this liquid on the floor.
>
> (3) Video surveillance from the store indicates that Brookshire's manager walked over the hazard approximately twenty-two (22) minutes before the plaintiff's fall.
>
> (4) Brookshire's manager testified that the liquid could be seen and was visible.
>
> (5) Brookshire's manager walked within a few feet of the liquid and admits he should have been able to see the liquid.
>
> (6) Video surveillance from the store does not show anyone spilling a liquid on the floor in the twenty-two (22) minutes after Brookshire's manager walked over the area where plaintiff fell.
>
> (7) Brookshire's manager is unable to provide any evidence that the spill occurred after he passed over the hazardous area.

Id.

## LAW AND ANALYSIS
### I. Legal Standards
#### A. The Summary Judgment Standard.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the

record." Fed R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." Fed. R. Civ. P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 325, 106 S. Ct. at 2554 ; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

A non-movant, however, cannot meet the burden of proving that a genuine dispute of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075. Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id. In determining whether a particular fact is "material," courts must look to the substantive law governing the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." Id. at 248, 106 S. at 2510. In a case based upon the diversity of citizenship jurisdiction of the federal courts, a federal court must look to the state law governing the case to determine materiality of allegedly disputed facts. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007).

When determining whether there is a genuine dispute as to a particular material fact, a Court "must view the evidence presented through the prism of the substantive evidentiary burden" that would be applied at trial. Anderson, 477 U.S. at 254, 106 S. Ct. at 2513. Under Louisiana law, a plaintiff in a delictual (tort) action has the burden of proving each element of his or her cause of action by a preponderance of the evidence. See Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La. 2/20/95), 650 So. 2d 757, 759. Thus, the Court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." Anderson, 477 U.S. at 252, 106 S. Ct. at 2512 (internal quotations omitted).

**B. The Louisiana Merchant Liability Act's Element of "Constructive Notice"**

The Louisiana Civil Code broadly provides for a civil cause of action for damages against tortfeasors, stating that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. However, in the specific context of negligence actions based on allegedly hazardous conditions existing in or on a merchant's premises, the LMLA provides a more specific

set of both duties for merchants and elements that plaintiffs in such cases must prove.

The LMLA states:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
>   (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
>   (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
>   (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions:
>
>   (1) "Constructive notice" means the claimant has proven that the condition existed for "such a period of time" that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. Rev. Stat. § 9:2800.6(A), (B), and (C).

As indicated *supra*, the Defendants base their Motion for Summary Judgment on Peterson's failure to prove "constructive notice." In White v. Wal-Mart Stores, Inc., the Louisiana Supreme Court addressed the LMLA, specifically as it concerned the element of "constructive notice." 97-0393 (La. 9/9/97), 699 So. 2d 1081, 1082. The court

determined that the phrase "such a period of time" involves a temporal element, which must be proven by a plaintiff. Id. at 1082. In its opinion, the court made clear that the plaintiff "must make a positive showing of the existence of the condition prior to the fall." Id. at 1084. Additionally, the plaintiff must show that the condition existed for a sufficient period of time prior to the fall. Id. When it comes to proving the condition existed for a sufficient period of time prior to the fall, the court held that there was no "bright line" time period and whether the condition existed for a sufficient period of time is a factual question. Id. Nonetheless, the court further held that the plaintiff must still show some positive evidence of how long the condition existed prior to the plaintiff's fall.[1] Id. ("A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute."). This burden lies strictly with the plaintiff and does not shift. See id. ("A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall.").

### C. Analysis

In the present action, Peterson has failed to raise a genuine issue of material fact that Brookshire had "constructive notice" of the liquid. Peterson's Opposition to Defendants' Motion for Summary Judgment provides the Court with inaccurate legal

---

[1] The statute "places a heavy burden of proof on plaintiffs." Bagley v. Albertsons, Inc., 492 F.3d 328, 330 (5th Cir. 2007) (quoting Jones v. Brookshire Grocery Co., 37-117 (La. App. 2 Cir. 5/14/03), 847 So.2d 43, 48). "'Mere speculation or suggestion' is not sufficient to meet this burden, and courts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are 'no more likely than any other potential scenario.'" Id. at 330 (quoting Allen v. Wal-Mart Stores, Inc., 37-352 (La. App. 2 Cir. 6/25/03), 850 So. 2d 895, 898-99).

principles, mischaracterized deposition testimony, and pure speculation and inference, which this Court finds, based on applicable jurisprudence, clearly insufficient to meet her burden of proof. First, it should be noted that the Defendants are not required to make a positive showing of the absence of the existence of the condition prior to the fall. See White v. Wal-Mart Stores, Inc., 97-0393 (La. 9/9/97), 699 So. 2d 1081, 1084. Peterson bears the burden of positively showing the existence of the condition prior to the fall and the existence of the condition for a period of time prior to the fall. It is undisputed that the clear liquid was present subsequent to Peterson's slip and fall as evidenced by Peterson in her deposition, the deposition of Neill, the photographic evidence, and the Customer Accident Report. See Record Document 11-5 at 41, lines 15-25; see Record Document 11-4 at 22, lines 20-23; see Record Document 11-4 at 47-49 (photograph and customer accident report). However, Peterson has failed to positively show that the liquid was present prior to her fall; thus, failing to raise a genuine issue of material fact. This case is very similar, if not identical to Wyatt v. Target Corp. of Minnesota, where another court within this jurisdiction determined that the plaintiff failed to offer evidence of witnesses who could definitely state that there was a liquid on the floor prior to the plaintiff's fall or evidence of unique characteristics of the spill that would indicate the liquid had been on the floor for a period of time. No. 11-CV-1759, 2012 WL 5866575, at *4 (W.D. La. Nov. 19, 2012). Therefore, the court held that the plaintiff failed to show the liquid existed on the floor prior to the incident and granted the defendant's motion for summary judgment. Id. at *4.

Similar to the plaintiff in Wyatt, who failed to offer testimony of witnesses who could definitely state that a liquid was on the floor, Peterson not only has failed to offer testimony

of witnesses who could definitely state that a liquid was on the floor prior to Peterson's fall, but has also failed to offer testimony of any witnesses altogether. Moreover, Peterson testified that she did not see the substance on the floor prior to her fall. In fact, Peterson testified that she walked through the area where she fell on two prior occasions without noticing any substance on the floor. Consequently, Peterson has failed to offer any positive evidence to show the condition existed prior to her fall in order to satisfy her burden on this Motion for Summary Judgment. As to the period of time element of "constructive notice," Peterson testified that there was no evidence of grocery shopping tracks, footprints, or any other marks or skidding through the liquid, which would establish that the liquid existed for some period of time prior to the fall. See Record Document 11-5 (deposition 42 lines 10-18). The photographic evidence further supports this statement. See Record Document 11-4 at 47 (photograph). The fact that numerous customers traversed the aisle and some appear to walk directly over the area where Peterson fell only weakens Peterson's argument that the condition existed for a period of time prior to her fall. See Exhibit C. Therefore, Peterson, like the plaintiff in Wyatt, has failed to offer evidence of unique characteristics of the spill that would indicate the liquid had been on the floor for a sufficient period of time prior to her fall. Accordingly, Peterson has failed to offer positive evidence to meet this temporal element in order to satisfy her burden on this Motion for Summary Judgment.

Peterson attempts to rely on the undisputed fact that Neill was present at or near the scene of the incident twenty-two minutes prior to her fall and the unsubstantiated conclusion that the liquid was present at that time, in concluding that Brookshire through its employee, Neill, failed to exercise reasonable care in order to satisfy the "constructive

notice" element. However, the Court rejects this conclusion. This argument is identical to the argument the plaintiff made in Babin v. Winn-Dixie Louisiana, Inc. that the Louisiana Supreme Court rejected. 2000-0078 (La. 6/30/00), 764 So.2d 37, 40. In Babin, the plaintiff filed suit as a result of slip and fall caused by toothpicks. The trial court granted summary judgment in favor of the defendant holding that the plaintiff failed to raise genuine issue of material fact as to constructive notice and the appellate court reversed and remanded the trial court's decision. See id. at 40. In reversing and remanding the trial court's decision, the court of appeals speculated that the plaintiff could show there was a possibility the boxes had been on the floor for some period of time, and that defendant's employee was negligent in failing to observe the toothpick boxes. See id. However, the Louisiana Supreme Court rejected the speculative reasoning of the court of appeals and held that the defendant evidenced an absence of factual support for an essential element of the plaintiff's cause of action, constructive notice, because the plaintiff was unable to show that the toothpick boxes were on the floor for some period of time prior to the plaintiff's fall. See id. In coming to this decision, the court specifically cited the defendant's affidavit of its employee, who stated that she had inspected the aisle ten minutes prior to plaintiff's fall and did not observe any toothpick boxes on the floor. See id. At that point, the Louisiana Supreme Court determined the burden shifted to the plaintiff to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. See id. The plaintiff was unable to produce such factual support.

In order to prove "constructive notice," Peterson relies on this same speculative reasoning used by the plaintiff and accepted by the court of appeals in Babin. However, like the Louisiana Supreme Court in Babin, this Court rejects Peterson's speculative

argument. Similar to the employee in Babin, who testified that she did not see the toothpicks ten minutes prior to the plaintiff's fall, Neill testified that he did not see a clear liquid on the floor twenty-two minutes prior to Peterson's fall and that he was trained to look for such hazards. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute "constructive notice" unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition. La. Rev. Stat. § 9:2800.6(C)(1). Peterson has only offered speculation rather than factual support that Neill knew or in the exercise of reasonable care should have known of the condition because Peterson has failed to establish that the liquid was present twenty-two minutes prior to her slip and fall. The fact that Neill was trained and also trains his employees to look for such hazards does not alter this Court's conclusion. In fact, this fact strongly supports this Court's findings and conclusion. The Court rejects Peterson's speculative argument that Brookshire through its employee, Neill, failed to exercise reasonable care.

Therefore, Peterson has failed to offer positive evidence that the liquid existed prior to her fall and for some period of time prior to her fall in order to establish "constructive notice" in order to meet her burden on this Motion for Summary Judgment. Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED**.

## CONCLUSION

Based on the foregoing reasons, the Court finds there are no genuine issues of material fact for trial and the Defendants are entitled to judgment in their favor as a matter of law. Accordingly, Defendants' Motion for Summary Judgment (Record Document 11) shall be **GRANTED,** and Peterson's claims **DISMISSED WITH PREJUDICE.**

A Judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this 6th day of November, 2017.

                                                                               S. MAURICE HICKS, JR.
                                                             UNITED STATES DISTRICT JUDGE